## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| LAIRD BOWERS, | |
| Plaintiff, | |
| v. | |
| CITY OF VINITA PARK, MISSOURI, *a municipal corporation*, | **Case No.:  4:15-cv-487** |
| and | ***JURY TRIAL DEMANDED*** |
| MAYOR JAMES MCGEE, *in his individual and official capacities*, | |
| and | |
| CELESTE MCGEE, BRIAN GREMAUD, RICH REDEL, ORA STOKES, WANDA FAIRLEY, DENNIS HAYDEN, *in their individual and official capacities as the City of Vinita Park Board of Aldermen*, | |
| Defendants. | |

## COMPLAINT

Plaintiff Laird Bowers, through counsel, for his Complaint against Defendants City of Vinita Park, Mayor James McGee, Celeste McGee, Brian Gremaud, Rich Redel, Ora Stokes, Wanda Fairley, and Dennis Hayden, alleges:

## INTRODUCTION

1.     This action arises under the First and Fourteenth Amendments to the Constitution of the United States and other federal law, including 42 U.S.C. § 1983 and § 1988. Plaintiff was terminated from the City of Vinita Park police department because he reported violations of law and policy regarding Mayor James McGee's abuse of authority, repeated interference with law enforcement activities, and efforts to falsify public records. Plaintiff asserts claims for retaliation

1

for exercising First Amendment rights, along with a state law claim for wrongful termination in violation of public policy, and invasion of privacy.

2.      Plaintiff Laird Bowers ("Bowers") is a citizen of the State of Missouri, residing in the Eastern District of Missouri. At all times relevant, Bowers was employed by the City of Vinita Park, Missouri, working in the police department.

3.      Defendant City of Vinita Park, Missouri  (the "Vinita Park") is a municipal corporation under the laws of Missouri. Vinita Park is situated within the Eastern District of Missouri.

4.      Defendant Mayor James McGee ("Mayor McGee") is a citizen of the State of Missouri, residing in the Eastern District of Missouri. Mayor McGee is, and at all relevant times was, the duly elected Mayor of Vinita Park. Mayor McGee is being sued in both his individual and official capacities.

5.      Defendants Celeste McGee, Brian Gremaud, Rich Redel, Ora Stokes, Wanda Fairley, and Dennis Hayden, are and/or were at all times relevant, residents and/or business owners within Vinita Park. At all times relevant, they were the members of the Vinita Park Board of Aldermen. Defendants are being sued in their individual and official capacities.

6.      The uniform and equitable enforcement of the law, criticism of government officials, potential corruption and favoritism, and the attempted alteration of public documents are matters of public concern upon which every citizen, including Bowers, as a citizen of Missouri, has a constitutional right to speak.

7.      As a citizen, Bowers complained about Mayor McGee's conduct to the Missouri State Highway Patrol, and others, and was soon terminated after Defendants manufactured a pretextual basis for his termination.

2

8.     This Court has subject matter jurisdiction under 28 U.S.C. §1343 and § 1331. This Court has supplemental jurisdiction over Bower's state law claims pursuant to 28 U.S.C. § 1367 because they form part of the same case or controversy as the federal claims.

9.     Venue is proper in that a substantial part of the unlawful events giving rise to Plaintiffs' claims occurred in the Eastern District of Missouri, Eastern Division, and all Defendants reside in the Eastern District of Missouri, Eastern Division.

10.    Defendants may maintain one or more policies of insurance with respect to tort claims filed against them, and therefore, to the extent that any Defendants may attempt to assert the defense of sovereign immunity with respect to any tort claim raised herein, that defense may be waived under the provisions of Mo. Rev. Stat. § 537.610.

11.    At all relevant times, the Defendants were acting under color of state law.

12.    Defendants' clearly unlawful actions described herein reflected the official policy of Vinita Park. Plaintiff's rights to speech, and to the preservation of his fundamental right of privacy, were at all times relevant, clearly established.

## FACTUAL ALLEGATIONS

13.    Bowers was employed in the police department of Vinita Park from June 23, 2011 until July 16, 2013. During the time of his protected activity described in detail below, he held the position of Acting Chief of Police. At the time of his unlawful termination, Bowers held the position of Lieutenant.

14.    Mayor McGee has a very public history of micromanagement and influence over Vinita Park's police department. As Board Member Brian Gremaud is reported to have stated publicly to the *Riverfront Times* newspaper, Mayor McGee is "almost obsessed with that department."

3

15.     Mayor McGee's obsession troubled Bowers after the Mayor campaigned to change an existing police report for Charles Yarbrough. Yarbrough had been arrested, charged, and booked on a felony charge for vandalizing Vinita Park public property. Mayor McGee, at the request of Yarbrough's mother, attempted to push what was in reality a felony through the City of Vinita Park court system as a municipal ordinance violation. Further, the Mayor had the City Attorney dismiss the charge.

16.     Bowers opposed this conduct and expressed such opposition to the City Attorney, Marc Kramer. Thereafter, the Mayor escalated a campaign of discipline and writing a book on Bowers.

17.     Additionally, a video surveillance tape captured a man named Emanuel Smith selling to a local pawn shop a tranquilizer gun that was taken from city property. Upon information and belief, the Mayor then orchestrated a plan for the suspect's father to purchase the gun back from the pawn shop and place it back on city property. The Mayor then reported to then Vinita Park Detective Steven Jones that the gun was "found" and directed Jones to make the police report reflect this "finding."

18.     Acting as a citizen and outside the scope of his job duties, Plaintiff reported the Mayor's conduct to the City of Vinita Park Board of Aldermen, the Missouri Ethics Commission, and the St. Louis County Prosecuting Attorney's Office.

19.     Further, on April 30, 2013, acting as a citizen and outside the scope of his job duties, Bowers reported to the Missouri State Highway Patrol that Mayor McGee attempted to alter police records and abused his authority in interfering with the felony arrest of Charles Yarbrough.

4

20.     On May 7, 2013, Mayor McGee (without Board of Aldermen approval) purported to demote Plaintiff from Acting Chief of Police to Lieutenant. At that time, Mayor McGee also locked Bowers out of his office.

21.     On May 31, 2013, Mayor McGee purported to terminate Bowers' position as Acting Chief of Police, and demoted Bowers to Lieutenant, presumably now with Board of Aldermen approval. On July 16, 2013, Bowers was terminated.

22.     Defendants' adverse actions were in retaliation for Bowers' protected conduct in reporting to the Missouri State Highway Patrol, and others, Mayor McGee's misconduct, in violation of established law and public policy in Missouri.

23.     Bowers' reporting and criticism of the public official's conduct touches upon a matter of public concern.

24.     Board Member Defendants who voted in favor of the adverse actions directly participated in Bowers' discharge.

25.     Defendants' actions in terminating Bowers for reporting and refusing to cover up or otherwise silently accept or acquiesce in the violations of law were clearly unreasonable.

26.     In an effort to support the unlawful termination, Defendants engaged in a campaign to create a pretextual basis for Bowers' termination.

27.     Upon the hiring of Bowers' replacement, Chief Timothy Swope, Defendants escalated their campaign to create a pretextual basis for termination. Chief Swope began to review Bowers' application documents, and surveyed the department to find bases for termination.

28.     Ultimately, Bowers was terminated for the pretextual reason that he permitted officers on the street who were not firearm qualified. This occurred, however, at the Mayor's

5

explicit direction and order, and was then used against Bowers. In fact, many other officers at

Vinita Park had been approved to take to the streets without firearm qualification even before

Bowers was Acting Chief, and with the Mayor's knowledge. Indeed, Bowers himself was

permitted to take to the streets without previous firearm qualifications under the previous Chief's

term.

29.     Mayor McGee and Vinita Park have a public history of creating pretextual

reasons to terminate police officers.

30.     At no time did the Mayor or any other City official instruct Bowers not to speak

on the matters of public concern described herein.

**COUNT I**
**Section 1983 Claim for Retaliation for Exercise of First Amendment Speech Rights**

31.     Plaintiff incorporates by reference the allegations of paragraphs 1-30.

32.     Bowers' reports were made as a public citizen and involved matters of social and

political significance, including (1) the criticism of a public official for hindering the just and

equitable enforcement of the laws; (2) protection and preservation of public property; (3)

participation in a potential state investigation; and (4) exposing perceived governmental

misconduct.

33.     Bowers' speech is protected by the First Amendment to the United States

Constitution and touches upon a matter of public concern.

34.     Bowers' speech went beyond those within his direct chain of command, went

outside of his job duties, and was made as a citizen of the State of Missouri.

35.     The decision to terminate Bowers was in retaliation against Bowers for exercising

his right to speak publicly about the Mayor's actions that directly affected the public interest.

6

36.     The decision to terminate Bowers was a deliberate choice among alternatives made by individuals with final policymaking authority.

37.     As a direct and proximate result, Bowers has been damaged by his lost wages and benefits while unemployed following his discharge.

38.     As a direct and proximate result, Bowers has been damaged by his loss of the difference in wages between his previous employment and his employment opportunities post-firing, and including the present and into the future.

39.     As a direct and proximate result, Bowers has been damaged by the loss of health coverage, as well as other benefits of his employment.

40.     As a direct and proximate result, Bowers has suffered loss of reputation, loss of status in the community, loss of other potential business and professional opportunities, and has suffered emotional damages.

41.     Because Defendants' conduct was intentional, outrageous, malicious, and made with reckless indifference to Bowers' rights, Bowers is entitled to an award of punitive damages in an amount sufficient to deter Defendants and others from like conduct in the future.

## COUNT II
### Wrongful Discharge (Defendant Vinita Park)

42.     Plaintiff incorporates by reference the allegations of paragraphs 1-30.

43.     Bowers is a "whistleblower," whose report of wrongdoing was a contributing factor in his termination.

44.     Bowers' termination was in violation of public policy as recognized by the Courts of Missouri.

45.     As a direct and proximate result, Bowers has been damaged by his lost wages and benefits while unemployed following his discharge.

7

46.     As a direct and proximate result, Bowers has been damaged by his loss of the difference in wages between his previous employment and his employment opportunities post-firing, and including the present and into the future.

47.     As a direct and proximate result, Bowers has been damaged by the loss of health coverage, as well as other benefits of his employment.

48.     As a direct and proximate result, Bowers has suffered loss of reputation, loss of status in the community, loss of other potential business and professional opportunities, and has suffered emotional damages.

49.     Because Defendants' conduct was intentional, outrageous, malicious, and made with reckless indifference to Bowers' rights, Bowers is entitled to an award of punitive damages in an amount sufficient to deter Defendants and others from like conduct in the future.

**COUNT III**
**Invasion of Privacy - Publication of Private Facts (Mayor McGee)**

50.     Plaintiff incorporates by reference the allegations of paragraphs 1-30.

51.     The Supreme Court of Missouri has stated that employees have a "fundamental right of privacy" in their personnel records. *State ex rel. Tally v. Grimm*, 722 S.W.2d 604, 605 (Mo. banc. 1987). At the time of the conduct alleged herein, that fundamental right was clearly established.

52.     Personnel-related documents relating to the discipline of public employees such Bowers are protected from disclosure to the public pursuant to Mo. Rev. Stat. § 610.021(3). At the time of the conduct alleged herein, that fundamental protection was clearly established.

53.     In its May 16-22, 2013 issue, the *Riverfront Times* published an article detailing the controversial behavior of Mayor McGee.

8

54.     According to that article, "[o]ne by one, McGee show[ed] *Riverfront Times*
internal memos detailing how Bowers has failed to live up to his expectations. One says
restrooms in the parks should have been locked by officers but were not; another time he faults
Bowers for failing to write tickets for residents leaving their trash cans out."

55.     Mayor McGee published Bowers' confidential, closed personnel records in which
Bowers had a fundamental right of privacy.

56.     Mayor McGee had no privilege or right to disclose Bowers' personnel records to
a member of the media in connection with the preparation of a mass distribution article.

57.     As a closed record, the public had no legitimate concern with knowing Bowers'
personnel record information.

58.     McGee published the information so as to bring shame and humiliation upon
Bowers.

59.     As a direct and proximate result, Bowers has been damaged.

## COUNT IV
### Section 1983 Claim for Retaliation for Exercise of First Amendment Speech Rights

60.     Plaintiff incorporates by reference the allegations of paragraphs 1-30.

61.     Bowers' reports were made as a public citizen and involved matters of social and
political significance, including (1) the criticism of a public official for hindering the just and
equitable enforcement of the laws; (2) protection and preservation of public property; (3)
participation in a potential state investigation; and (4) exposing perceived governmental
misconduct.

62.     Bowers' speech is protected by the First Amendment to the United States
Constitution and touches upon a matter of public concern.

9

63.    Bowers's speech went beyond those within his direct chain of command, went outside of his job duties, and was made as a citizen of the State of Missouri.

64.    The Supreme Court of Missouri has stated that employees have a "fundamental right of privacy" in their personnel records. *State ex rel. Tally v. Grimm*, 722 S.W.2d 604, 605 (Mo. banc. 1987). At the time of the conduct alleged herein, that fundamental right was clearly established.

65.    Personnel-related documents relating to the discipline of public employees such Bowers are protected from disclosure to the public pursuant to Mo. Rev. Stat. § 610.021(3). At the time of the conduct alleged herein, that protection was clearly established.

66.    In its May 16-22, 2013 issue, the *Riverfront Times* published an article detailing the controversial behavior of Mayor McGee.  This article was published just a couple of weeks after Bowers made the protected complaint described above.

67.    According to that article, "[o]ne by one, McGee show[ed] *Riverfront Times* internal memos detailing how Bowers has failed to live up to his expectations. One says restrooms in the parks should have been locked by officers but were not; another time he faults Bowers for failing to write tickets for residents leaving their trash cans out."

68.    Mayor McGee published Bowers' confidential, closed personnel records in which Bowers had a fundamental right of privacy.

69.    As a closed record, the public had no legitimate concern with knowing Bowers' personnel record information.

70.    McGee published the information so as to bring shame and humiliation upon Bowers, and to chill Bowers' speech regarding McGee's conduct.

71.    As a direct and proximate result, Bowers has been damaged.

## PRAYER FOR RELIEF

WHEREFORE, Bowers respectfully requests that the Court enter judgment in his favor and against Defendants as follows:

A.  Award Bowers lost wages, including backpay and frontpay, and benefits;

B.  Award Bowers damages for his emotional injuries, including without limitation, emotional suffering, mental anguish, inconvenience, humiliation, loss of enjoyment of life, stress, and loss of reputation;

C.  Award Bowers punitive damages;

D.  Award Bowers incidental and consequential damages;

E.  Order Defendants to pay all costs and attorneys' fees pursuant to  42 U.S.C. § 1988;

F.  Award Bowers pre and post judgment interest;

G.  Grant Bowers such further relief as deemed appropriate.

Respectfully submitted,

**THE LAW OFFICES OF JONATHAN P. BECK**

Jonathan P. Beck #52439MO
Dale Sweet #66272MO
3500 Magnolia Avenue
St. Louis, Missouri  63118
Phone:  (314) 772-2889
Fax: (314) 772-2892
jpbeck@jpbecklaw.com
dsweet@jpbecklaw.com